# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 21-0065V
UNPUBLISHED

JONATHAN TURNQUEST,

               Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

               Respondent.

Chief Special Master Corcoran

Filed: July 2, 2024

*Edward M. Kraus, Law Offices of Chicago Kent, Chicago, IL, for Petitioner.*

*Katherine Carr Esposito, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On January 5, 2021, Jonathan Turnquest filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine he received on August 15, 2020. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the total amount of **$30,000.00**, **for Petitioner's actual pain and suffering.**

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Relevant Procedural History

On January 5, 2021, Petitioner filed the present claim. Petition at 1. On November 21, 2022, Respondent stated that he had determined that this case was not appropriate for compensation and requested 45 days to file the Rule 4(c) Report. ECF No. 30.

On January 5, 2023, Respondent filed the Rule 4(c) report contesting entitlement, stating that Petitioner's claim failed for several reasons. Respondent's Report at 6-11. First, Respondent argued that Petitioner failed to satisfy the six-month severity requirement. *Id*. at 6. Second, assuming that Petitioner was able to overcome the severity objection, Respondent argued that Petitioner's SIRVA claim failed because the evidence did not show that his shoulder pain began within 48 hours of vaccination. *Id*. at 10. Third, Respondent argued that there were other conditions or abnormalities that Petitioner had that explained his condition. *Id*.

On May 31, 2023, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages ("Motion"), arguing that Petitioner had met the severity requirement and established entitlement to compensation for a SIRVA injury. ECF No. 39. As such, Petitioner requested $75,000.00 for his pain and suffering. *Id*.

Respondent filed a Response to Petitioner's Motion on June 30, 2023 ("Response"), recommending that entitlement to compensation be denied. ECF No. 41. Respondent argued that Petitioner had failed to satisfy the six-month severity requirement because the single record that occurred after the six-month mark, was only made because Petitioner sought to cure the severity requirement of the case. Response at 9-10. Respondent also argued that Petitioner had not established that he suffered a left-side SIRVA due to the flu vaccination, because he failed to establish that his shoulder pain began within 48-hours of vaccination, as evidenced by his first complaint, more than three months after vaccination, and because Petitioner's rotator cuff tear was not preponderantly caused by the vaccination and explained his symptoms. *Id*. at 12-16.

This case was set for an expedited "Motions Day" hearing, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. The Motions Day hearing took place on June 28, 2024. Minute Entry dated June 28, 2024. After the argument, I orally ruled on Petitioner's entitlement to compensation and made a damages determination as well. This Decision memorializes those findings/determinations.

II.     **Factual Findings and Ruling on Entitlement**

    A.  **Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

3

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

**B.  Six Month Severity Requirement**

To be eligible for compensation generally, the Vaccine Act requires a petitioner to have "suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." 42 U.S.C. § 300aa-11(c)(1)(D)(i).

I find that the record has presented enough evidence to support the determination that the six-month severity requirement is met. Petitioner received the vaccination on August 15, 2020. Thus, he must demonstrate that his injury persisted through February

15, 2021. The thrust of Respondent's argument is that Petitioner had only one shoulder-related care appointment beyond six months from his August 15, 2020 vaccination, and this appointment "was clearly made in response to this Court's concern that the severity requirement was not satisfied." Response at 9. Because this appointment was made "for the purpose of litigation," Respondent argues that I must consider this as evidence of bias or prejudice and essentially ignore it. *Id*. at 10. Without consideration of this appointment, Respondent states that Petitioner's failure to satisfy the severity requirement is fatal to his claim and the petition must be dismissed.

Admittedly, the claim was filed somewhat prematurely, anticipating the possibility that the Department of Health and Human Services was going to eliminate SIRVA as a Table claim. Motion at 7. Thus, Petitioner needed additional evidence after filing to meet the severity requirement (which could not be established when the claim was initiated). ECF No. 13. On August 23, 2021, Petitioner presented to his orthopedist, Dr. Rotstein, to have his shoulder evaluated. Ex. 7 at 8. Dr. Rotstein examined Petitioner's shoulder on August 23, 2021 and documented that while Petitioner exhibited a normal range of motion ("ROM") both actively and passively, and his ROM had improved from his December 14, 2020 visit, his condition was otherwise largely unchanged with tenderness of the greater tuberosity and at the lateral cuff insertion, pain with passive range of motion, and positive Neer's and Hawkin's impingement tests. Ex. 7 at 6. These are objective findings that demonstrate that Petitioner continued to have impairments of his left shoulder that were not present prior to vaccination. Thus, Petitioner has presented adequate evidence that the six-month severity requirement has been met.

### C. Factual Finding Regarding QAI Criteria for Table SIRVA

Respondent has also argued that Petitioner failed to prove both the second and fourth criterion for a SIRVA Claim, i.e., that Petitioner's shoulder pain did not occur within the specified 48-hour onset timeframe, and that there is an abnormality present that would explain Petitioner's symptoms. Response at 11-17.

#### a. Onset

Although Petitioner argued that his pain and limited range of motion began the day after vaccination, Respondent maintained that the contemporaneous medical records do not support this assertion. Response at 12. Respondent noted that at the first, post-vaccination medical appointment (on September 25, 2020), Petitioner did not mention any shoulder pain, and in fact told his PCP that he was "feeling good." Ex. 4 at 9. And in his first visit to Dr. Rotstein (now more than three months after vaccination) on November 24, 2020, Petitioner only stated that he "noticed shoulder pain develop after his flu shot [that] never went away and recently worsened." Ex. 2 at 12. Respondent argued that this

record does not document the onset of Petitioner's symptoms within 48-hours of vaccination. Response at 12.

In fact, however, the evidence in the record preponderantly supports a finding that Mr. Turnquest's left shoulder pain occurred within 48-hours of his August 15, 2020 vaccination. Petitioner's use of the term "after," like the word "since," occurs frequently in cases involving onset issues, and I have consistently interpreted the words to be analogous to "close in time," even they are otherwise nonspecific. In addition, most individuals believe vaccine-associated shoulder pain will dissipate, and often wait before seeking medical advice. And the delay in this case is not significant. Without any counterstatements or other proof specifically placing the onset *outside* the 48-hour window, I find that there is preponderant evidence in this case to find that onset has been met.

### b.  Another abnormality that explains Petitioner's symptoms

Respondent's second argument, that there are other conditions or abnormalities that would explain Petitioner's condition, is based on an MRI report that showed that Petitioner had a full thickness tear of the distal anterior supraspinatus tendon and mild degeneration of the AC joint. Ex. 2 at 4. Respondent argues that neither of these conditions are likely to be caused by administration of the flu vaccine. Response at 16. This argument is also not persuasive. Assuming that Petitioner had a preexisting tear in his shoulder prior to vaccination, this tear was not causing him any symptoms. Respondent acknowledges that Petitioner had no reported history of left shoulder issues prior to vaccination. Response at 2. Thus, even accepting Respondent's argument as true, it is more likely than not, based on the existing record, that any preexisting pathology did not cause the symptoms that Petitioner experienced to his left shoulder after vaccination.

### D.  Other Requirements for Entitlement

As stated above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e., receipt of a covered vaccine, vaccine received within the United States, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. I therefore find that Petitioner is entitled to compensation in this case.

### E. Damages

#### a. The Parties' Arguments

Citing three[4] prior damages determinations, Petitioner requests $75,000.00 in pain and suffering. Motion at 15-20. Petitioner asserts that his course of treatment warrants an award close to the median of awards for SIRVA cases because he experienced significant pain and limited range of motion within 24 hours of vaccination, had significant findings on MRI, including a full thickness rotator cuff tear, and his only prescribed treatment course was surgery due to the severity of his injury. Petitioner argued that his situation is comparable to the aforementioned non-surgical SIRVA cases. *Id.* at 15-17.

Respondent, by contrast, proposes an award of no more than $20,000.00 for pain and suffering. Response at 17-21. He argues that "petitioner's injury is much less severe than other SIRVA cases in the program, including the one primarily relied upon by petitioner as a 'comparable' case." *Id.* at 19. Respondent cited to one case[5] during oral argument that was filed the day before the hearing, where the petitioner was awarded $35,000.00, arguing that this case is more analogous than the cases cited by Petitioner, and that a lesser amount is appropriate given the distinguishing factors in each of the cases.

#### b. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

---

[4] Petitioner discusses the following cases in his Motion: *Decoretz v. Sec'y of Health & Human Servs.*, No. 19-391V, 2021 WL 23466468, at *2-3 (Fed. Cl. May 7, 2021); *Smallwood v. Sec'y of Sec'y of Health & Human Servs.*, No. 18-291v, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. April 29, 2020); *Acetta v. Sec'y of Health & Human Servs.*, No. 17-11731v, 2021 WL 1718202 (Fed. Cl. Spec. Mstr., March 31, 2020).

[5] Respondent filed the following case on June 27, 2024: *Valdez v. Sec'y of Health & Human Servs.*, No. 21-0394v, 2024 WL 1526536 at *7-10 (Fed. Cl. Spec. Mstr. Feb. 28, 2024). ECF No. 45-1.

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### c. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Mr. Turnquest was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of his injury. When performing this analysis, I review the same record relied upon to determine entitlement, including the filed affidavits and medical records, written briefs, and argument at the Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases.

Mr. Turnquest averred that he "began to experience pain and limited range of motion in [his] left arm and shoulder." Ex. 1 at 1. He stated that he cancelled his regular Sunday golf foursome the day after he received the vaccination, on August 16, 2020, and told his friends that he had  a flu shot that might have injured his shoulder and that he did not want to make it worse by playing golf. Ex. 8 at 1. He stated that he was not able to return to golf for the rest of the season because of his injury. *Id*. He stated that he decided to live with the pain and was optimistic his shoulder would heal on its own. *Id*. at 2. He said that his optimism waned in October 2020 although he took the risk of contracting COVID-19 very seriously and decided to forego seeing a doctor as long as he could. *Id*. He said he could no longer tolerate the pain in early November and had to wait several weeks for an opening but was able to see an orthopedic specialist on November 24, 2020. *Id*. at 3.

On November 24, 2020, more than three months post vaccination, Mr. Turnquest presented to Barrington Orthopedic Specialists where he was evaluated by orthopedic surgeon Jason Rotstein, M.D. Ex. 2  at 12. He reported that his left shoulder pain "began in August 2020 … and after his flu shot [that] never went away and recently worsened." *Id*. On exam, Petitioner had reduced range of motion, weakness, tenderness and positive signs on the Neer's Hawkins, and drop arm tests. *Id*. An x-ray was normal and an MRI was ordered. *Id*. at 12.

On December 2, 2020, Mr. Turnquest underwent a left shoulder MRI which revealed:  1) Full-thickness tear of the distal anterior supraspinatus tendon. Fluid signal

---

[6] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

gap measures approximately 1.5 cm. 2) Mild-to-moderate distal infraspinatus tendinopathy. 3) Mild AC joint DJD with inferior acromial tilting. This narrows the coracoacromial arch and can predispose to impingement. 4) Small joint effusion with bursal fluid extension into the subacromial/subdeltoid bursa. Moderate subcoracoid bursitis. Ex. 2 at 14.

Mr. Turnquest returned to Barrington Orthopedic on December 14, 2020. Ex. 2 at 7. He was noted to have an injury of the tendon of the rotator cuff of his shoulder and was slated to undergo shoulder arthroscopy with rotator cuff repair surgery. Ex. 2 at 9. Petitioner received a referral for post-operative physical therapy ("PT"). *Id*. However, Petitioner never underwent surgery. *See*, i.e., Ex. 7 at 8.

The next time Mr. Turnquest is seen for his shoulder is on August 23, 2021 (more than eight months later), for evaluation of his shoulder and to discuss his options for treatment. Ex. 7 at 6. On examination, Dr. Rotstein noted improved active and passive range of motion, but continued pain with motion and impingement. Ex. 7 at 10. Petitioner and Dr. Rotstein discussed the "natural history of diagnosis, non-surgical and surgical treatment and alternative treatment, risks and benefits of each and risks of delaying treatment," after which petitioner "made an informed decision to proceed with surgery." *Id*. Petitioner was to "call when ready to schedule surgery." *Id*. There are records of further treatment for Petitioner's shoulder.

Mr. Turnquest stated that he still suffers from pain in his left shoulder to this day. Ex. 1 at 1. He described pain that becomes aggravated, and audible popping and cracking noises when he raises his left shoulder. *Id*. He has difficulty with daily activities that require use of his left arm, such as driving, reaching out his car window at a drive through, shoveling snow, and walking his dog. Occasionally, for no known reason, his symptoms become aggravated for longer periods of time. He has decided that when one of those episodes becomes unbearable, he will schedule surgery. Until that time, he plans to avoid the significant disruption to his life and work of surgery, recovery, and rehabilitation by taking NSAID medication and modifying or restricting his activities. Ex. 11 at 2.

Despite such contentions, however, it is facially evident that this is a non-surgical case involving a very limited treatment course. There is no way around that fact. Petitioner's entire treatment course consisted of three orthopedic visits, one x-ray, and one MRI. In addition, there were at least two substantial treatment gaps and a lack of any further treatment after August 2021. While I credit the surgery recommendation as *some* evidence of severity (and factor that into my pain and suffering determination), the substantial gaps in treatment warrant greater weight. A case in which surgery is proposed, but never occurs – and where the claimant otherwise has limited treatment – is simply not a matter where an even moderately-high pain and suffering award is merited.

In fact, the lack of surgery stands out given Petitioner's medical history. That history reveals several involved orthopedic issues, including a hernia repair, two hip replacements, and back surgery (C7 discectomy and fusion). Ex.2 at 8, Ex. 4 at 21, and Ex. 5 at 71. Mr. Turnquest is no stranger to the different types of treatments available to treat orthopedic injuries. If Petitioner's orthopedic surgeon only offered surgery as option, Petitioner was free to seek a second opinion or request other treatment such as steroid injections, physical therapy, or medication – or simply to have undergone the surgery as recommended. He did not, however, and there is no indication in the record that Mr. Turnquest availed himself to any other types of treatment. Furthermore, Petitioner has not sought any treatment for his shoulder since August of 2021.

The claimants in Petitioner's proposed comparable cases all received more treatment than Mr. Turnquest. I therefore find that the figures proposed in those cases are too high. Respondent did not cite to a comparable case in his brief, but did later provide a citation to *Valdez*[7] just prior to hearing. While that petitioner still received more treatment than Mr. Turnquest, I do find that this case is the best comparable of all the cases cited by the parties.

In sum, Petitioner's SIRVA injury was exceedingly mild. This very limited nature of his treatment, and the treatment gaps are difficult to ignore, and indicates that the injury was not so severe that Mr. Turnquest felt the need to seek out other treatment options besides surgery. Thus, considering all the aforementioned issues leads me to steeply discount the amount requested by Petitioner.

I do credit Petitioner's argument about the delay in seeking treatment due to the Covid 19 pandemic. Such a delay in seeking non-life threating care was reasonable given the situation in 2020. I also credit Petitioner's argument that his MRI showed significant findings and that surgery was the primary treatment offered. For this reason, I will increase the amount offered by Respondent, as the $20,000.00 figure is too low and not well defended by Respondent or supported by the case law.

Under such circumstances, and considering the arguments presented by both parties, a review of the cited cases, and based on the record as a whole, I find that $30,000.00 in compensation for Mr. Turnquest's pain and suffering, is reasonable and appropriate in a non-surgery SIRVA case like the present.

---

[7] *Valdez v. Sec'y of Health & Human Servs.*, No. 21-394V, 2023 WL 1526536 (Fed. Cl. Spec. Mstr. Feb. 28, 2024).

**F.  Conclusion**

In light of all of the above, the I award **a lump sum payment of $30,000.00, (for actual pain and suffering**) **in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

                                        **s/Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.